1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 03, 2023

4

SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7 | MATTHEW W.,[1] | No. 1:21-cv-03070-MKD

8 |              Plaintiff, | ORDER DENYING
                          | PLAINTIFF'S MOTION FOR
9 |     v.                | SUMMARY JUDGMENT AND
                          | GRANTING DEFENDANT'S
10 | KILOLO KIJAKAZI, ACTING | MOTION FOR SUMMARY
   | COMMISSIONER OF SOCIAL | JUDGMENT
11 | SECURITY,[2]          |
                          | **ECF Nos. 16, 17**
12 |              Defendant. |

13 _____

14 [1] To protect the privacy of plaintiffs in social security cases, the undersigned

15 identifies them by only their first names and the initial of their last names. *See*

16 LCivR 5.2(c).

17 [2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

18 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

19 Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

20 action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 17.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 416.920(d).

3       If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9       At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15       At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 31, 2018, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of December 1, 2018.[3]  Tr.

---

[3] Plaintiff previously applied for Title XVI benefits on January 25, 2012, which resulted in a November 19, 2013 unfavorable decision from an ALJ.  Tr. 51-70. Plaintiff appealed the decision, which resulted in a remand.  Tr. 77-82.  Plaintiff appeared at a remand hearing, which resulted in another unfavorable decision on October 25, 2017.  Tr. 87-115.  Plaintiff appealed the decision to the Appeals Council, who declined to review the decision on December 17, 2018.  Tr. 116-21. Plaintiff appealed to this Court, which does not show in the record.  *See Matthew*

ORDER - 6

10, 122, 244-49.  The application was denied initially, and on reconsideration.  Tr.

154-66, 168-74.  Plaintiff appeared before an administrative law judge (ALJ) on

October 6, 2020.  Tr. 23-50.  On October 29, 2020, the ALJ denied Plaintiff's

claim.  Tr. 7-22.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since December 31, 2018.  Tr. 12.  At

step two, the ALJ found that Plaintiff has the following severe impairments:

posttraumatic stress disorder (PTSD), depressive disorder, anxiety disorder,

personality disorder, and disorder of written expression.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 13.  The ALJ then concluded that Plaintiff has the RFC to perform

work at all exertional levels but with the following limitations:

> [Plaintiff] is able to understand, remember, and carryout 1-2 step tasks
> with only occasional changes in the work setting.  He can have only
> minimal supervisory contact.  He can work in proximity to others but
> not in cooperative or team efforts, and he can only have brief and

---

*W. v. Saul*, No. 1:19-cv-3008-MKD (E.D. Wash. Sept. 24, 2019).  This Court

denied Plaintiff's motion for summary judgment.  *Id.* (ECF No. 18).  Plaintiff does

not raise an issue regarding the lack of documentation of the prior appeal in the

record.

ORDER - 7

superficial interaction with coworkers.  He should have no interaction with the general public.

*Id.*

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 17.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, store laborer, and yard worker.  Tr. 18.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On March 30, 2021, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly applied *Chavez*;

2.  Whether the ALJ conducted a proper step-five analysis;

3.  Whether the ALJ conducted a proper step-three analysis;

4.   Whether the ALJ properly evaluated Plaintiff's symptom claims;

ORDER - 8

5.  Whether the ALJ properly evaluated the medical opinion evidence; and

6.  Whether the ALJ properly evaluated lay witness evidence.

ECF No. 16 at 2.

**DISCUSSION**

**A. *Chavez***

Plaintiff contends the ALJ erred in finding Plaintiff failed to rebut the presumption of ongoing non-disability.  ECF No. 16 at 4-7.  "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Secy of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Under the doctrine of res judicata, a prior, final determination of nondisability bars relitigation of that claim through the date of the prior decision.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).  Furthermore, in the Ninth Circuit, a prior, final determination of nondisability "create[s] a presumption that [the claimant] continued to be able to work after that date." *Id*. (citation and internal quotation marks omitted).[4]

---

[4] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social Security Administration's (SSA) interpretation of Social Security policy requiring de novo review of claims for unadjudicated periods.  The SSA applies the *Chavez*

ORDER - 9

1  "However, the authority to apply res judicata to the period *subsequent* to a prior

2  determination is much more limited." *Lester*, 81 F.3d at 827 (emphasis in

3  original).

4          "The claimant, in order to overcome the presumption of continuing

5  nondisability arising from the first administrative law judge's findings of

6  nondisability, must prove 'changed circumstances' indicating a greater disability."

7  *Chavez*, 844 F.2d at 693 (citation omitted).  Examples of changed circumstances

8  include "[a]n increase in the severity of the claimant's impairment," "a change in

9  the claimant's age category," and a new issue raised by the claimant, "such as the

10 existence of an impairment not considered in the previous application." *Lester*, 81

11 F.3d at 827-28 (citations omitted); *see also* Acquiescence Ruling (AR) 97-4(9),

12 available at 1997 WL 742758 at *3.

13         The ALJ found Plaintiff had not rebutted the presumption of non-disability,

14 as he had not met the burden of establishing that his mental impairments have

15 materially changed since the prior decision was issued.  Tr. 15.  Despite finding

16 Plaintiff had not met his burden in establishing his impairments have materially

17 changed since the prior decision, the ALJ performed the five-step analysis anew,

18 _____

19 presumption only as to claimants residing in the Ninth Circuit.  AR 97-4(9),

20 available at 1997 WL 742758 at *3.

ORDER - 10

and came to different step two, RFC, and step five conclusions.  Tr. 12-18, 93-107.

While the ALJ found Plaintiff continued to have no more than moderate limitations

in the Paragraph B areas of mental functioning, he considered the new criteria set

forth in the 2017 regulations when making the finding.  Tr. 13.

Plaintiff contends his impairments increased in severity and thus he rebutted

the presumption.  ECF No. 16 at 4-6.  Plaintiff points to differences in the evidence

from the prior decision to the present decision, including evidence he now cannot

leave his home without being accompanied, and his decrease in his ability to

independently function.  *Id.*  However, Plaintiff cites entirely to his own statements

and the statements of his siblings; he does not point to any objective evidence to

support the argument that his mental impairments have increased in severity.  *See*

*id.*  For the reasons discussed *infra,* the ALJ reasonably rejected Plaintiff's claims

and the lay witness testimony.

Plaintiff also contends his new impairment, obesity, is a changed

circumstance as Plaintiff's siblings testified his weight impacted his physical

functioning.  *Id.* at 6-7.  However, Plaintiff does not point to any objective

evidence that supports a finding that his obesity causes more than minimal

limitations.  *See id.*  Further, Plaintiff also contends he declined to attend a

consultative examination because he was not interested in pursuing the physical

portion of his claim.  ECF No. 16 at 15.  The ALJ reasonably found Plaintiff's obesity non-severe.  *See* Tr. 13.

Plaintiff has failed to meet his burden in demonstrating his impairments have materially worsened since the prior decision.  Thus, the ALJ did not error in finding Plaintiff failed to rebut the presumption of continued non-disability.  Further, any error is harmless as the ALJ performed a new five-step analysis.

**B. Step Five**

Plaintiff contends the ALJ erred at step five by relying on vocational expert testimony given in response to an incomplete hypothetical, and contends the jobs presented by the vocational expert do not exist in sufficient numbers.  ECF No. 16 at 7-9.

The ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations,

ORDER - 12

then the expert's testimony has no evidentiary value to support a finding that the

claimant can perform jobs in the national economy." *Id.*  However, the ALJ "is

free to accept or reject restrictions in a hypothetical question that are not supported

by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

A claimant fails to establish that a step five determination is flawed by simply

restating argument that the ALJ improperly discounted certain evidence, when the

record demonstrates the evidence was properly rejected. *Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

At step five of the sequential evaluation analysis, the burden shifts to the

Commissioner to establish that (1) the claimant is capable of performing other

work; and (2) such work "exists in significant numbers in the national economy."

20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  There is no "bright-line rule

for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389.

"There are two ways for the Commissioner to meet the burden of showing that

there is other work in 'significant numbers' in the national economy that claimant

can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-

Vocational Guidelines . . . ." *Id.*

"When a claimant fails entirely to challenge a vocational expert's job

numbers during administrative proceedings before the agency, the claimant forfeits

ORDER - 13

1    such a challenge on appeal, at least when that claimant is represented by counsel."

2    *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

3        Here, Plaintiff first contends the ALJ erred at step five by posing an

4    incoming hypothetical to the vocational expert.  ECF No. 16 at 8.  The ALJ found

5    Plaintiff has a severe impairment of "disorder of written expression" at step two

6    but did not ask the vocational expert if the listed jobs could be performed by a

7    person who spells at a third-grade level.  *Id.*  However, Plaintiff cites to testimony

8    regarding the third grade reading level, and to a consultative examination that

9    states "Disorder of written expression- per past testing."  Tr. 342.  The consultative

10   examination references a 2011 examination conducted by Dr. Schneider that notes

11   Plaintiff had a high school reading level but third grade spelling level.  Tr. 341.

12   However, the ALJ noted in the prior decision that Dr. Schneider's examination

13   indicated Plaintiff's MMPI-2 profile was invalid because Plaintiff over-endorsed a

14   high level of symptoms, and Dr. Peterson interpreted the examination results as

15   being evidence of symptom exaggeration.  Tr. 99.  Further, Dr. Schneider's

16   examination is not contained in the current record.  Thus, there is no current

17   objective evidence that Plaintiff spells at a third-grade level, and the past evidence

18   referenced by Plaintiff contains evidence of symptom exaggeration.  The

19   hypothetical posed by the ALJ accounted for Plaintiff's limited education.  Tr. 46.

20   As such, the ALJ did not pose an incomplete hypothetical to the vocational expert.

ORDER - 14

1    Next, Plaintiff contends the jobs do not exist in sufficient numbers.  ECF

2  No. 16 at 9.  However, Plaintiff was represented and did not challenge the

3  vocational expert's job numbers at the hearing.  *See* Tr. 48.  Plaintiff also did not

4  raise the issue to the Appeals Council.  Tr. 336-37.  Thus, Plaintiff has forfeited the

5  challenge on appeal.  *See Shaibi*, 883 F.3d at 1109.  Plaintiff is not entitled to

6  remand on these grounds.

7  **C. Step Three**

8    Plaintiff contends the ALJ erred at step three by failing to find Plaintiff

9  meets a mental listing and by setting forth a "boilerplate dismissal of the evidence"

10 at step three.  ECF No. 16 at 9-13.  At step three, the ALJ must determine if a

11 claimant's impairments meet or equal a listed impairment.  20 C.F.R. §

12 416.920(a)(4)(iii).

13   The Listing of Impairments "describes for each of the major body systems

14 impairments [which are considered] severe enough to prevent an individual from

15 doing any gainful activity, regardless of his or her age, education or work

16 experience."  20 C.F.R. § 416.925.  "Listed impairments are purposefully set at a

17 high level of severity because 'the listings were designed to operate as a

18 presumption of disability that makes further inquiry unnecessary.'" *Kennedy v.*

19 *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S.

20 521, 532 (1990)).  "Listed impairments set such strict standards because they

ORDER - 15

1   automatically end the five-step inquiry, before residual functional capacity is even

2   considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for

3   disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

4        "To *meet* a listed impairment, a claimant must establish that he or she meets

5   each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

6   180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a

7   listed impairment, a claimant must establish symptoms, signs and laboratory

8   findings 'at least equal in severity and duration' to the characteristics of a relevant

9   listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

10  20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and

11  none of them individually meets or equals a listed impairment, the collective

12  symptoms, signs and laboratory findings of all of the claimant's impairments will

13  be evaluated to determine whether they meet or equal the characteristics of any

14  relevant listed impairment." *Id*.  However, "'[m]edical equivalence must be based

15  on medical findings," and "[a] generalized assertion of functional problems is not

16  enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. §

17  404.1526(a)).

18       The claimant bears the burden of establishing her impairment (or

19  combination of impairments) meets or equals the criteria of a listed impairment.

20  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

ORDER - 16

1  articulation of the reason(s) why the individual is or is not disabled at a later step in

2  the sequential evaluation process will provide rationale that is sufficient for a

3  subsequent reviewer or court to determine the basis for the finding about medical

4  equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

5  *4 (effective March 27, 2017).

6       Here, the ALJ found that Plaintiff's impairments and combinations of

7  impairments did not meet or equal any listings, including Listings 12.04, 12.06,

8  12.08, 12.11, and 12.15.  Tr. 13.  The ALJ found Plaintiff had no more than

9  moderate limitations in the four areas of mental functioning and found neither the

10  Paragraph B nor Paragraph C criteria were satisfied.  *Id.*  While the ALJ did not

11  include further analysis under the step three heading, he referenced the later

12  findings of fact to support his analysis.  *Id.*  "An adjudicator's articulation of the

13  reason(s) why the individual is or is not disabled at a later step in the sequential

14  evaluation process will provide rationale that is sufficient for a subsequent

15  reviewer or court to determine the basis for the finding about medical equivalence

16  at step 3."  SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

17       Plaintiff argues the ALJ erred at step three, and contends he meets the

18  Paragraph B criteria and Paragraph C criteria of the mental health listings.  ECF

19  No. 16 at 9-13.  However, Plaintiff fails to specify which listing Plaintiff meets or

20  equals.  To meet a listing, the Plaintiff has the burden of demonstrating each

ORDER - 17

component of the listing is met. *Tackett*, 180 F.3d at 1099; *Burch*, 400 F.3d at 683.

To meet a mental health listing, Plaintiff must satisfy the requirements of the

Paragraph A criteria for a specific listing, not just the Paragraph B or C criteria.

*See* 20 C.F.R. § 404, Subpart P, Appendix I.  Plaintiff does not set forth any

argument as to how he satisfies the Paragraph A criteria for any listing.  As the

Paragraph A criteria is not met for any listing, any error on the ALJ's part

regarding the Paragraph B or Paragraph C criteria would be harmless.  *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, Plaintiff's

argument largely relies on his own self-reported limitations, which the ALJ gave

supported reasons to reject, for the reasons discussed *infra*.  Plaintiff is not entitled

to remand on these grounds.

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 16 at 13-16.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

ORDER - 19

1   other symptoms; 5) treatment, other than medication, an individual receives or has

2   received for relief of pain or other symptoms; 6) any measures other than treatment

3   an individual uses or has used to relieve pain or other symptoms; and 7) any other

4   factors concerning an individual's functional limitations and restrictions due to

5   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

6   416.929(c).  The ALJ is instructed to "consider all of the evidence in an

7   individual's record," to "determine how symptoms limit ability to perform work-

8   related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

9        The ALJ found that Plaintiff's medically determinable impairments could

10   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

11   statements concerning the intensity, persistence, and limiting effects of his

12   symptoms were not entirely consistent with the evidence.  Tr. 14.

13        *1. Work History*

14        The ALJ found Plaintiff's lack of work history contradicts his allegations

15   that he is unable to work due to his impairments.  Tr. 15.  Evidence of a poor work

16   history that suggests a claimant is not motivated to work is a permissible reason to

17   discredit a claimant's testimony that she is unable to work.  *Thomas*, 278 F.3d at

18   959; SSR 96-7 (factors to consider in evaluating credibility include "prior work

19   record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

20   1996); 20 C.F.R. § 416.929.

ORDER - 20

The ALJ noted Plaintiff has never worked, and there is no evidence that he has attempted to work.  Tr. 15.  Thus, the ALJ found Plaintiff's statements and his siblings' statements that Plaintiff cannot work is not based on any documented experience of trials and attempts to work, rendering the statements less persuasive. *Id.*  Plaintiff contends he tried to work, as documented in a prior ALJ decision. ECF No. 16 at 13-14.  While there is prior discussion of a brief work period, there are no documented earnings in Plaintiff's record.  Tr. 60, 62, 252-55.  Plaintiff contends his lack of work history, even prior to the current alleged onset date, is consistent with his allegations as he previously alleged he became disabled in 2001.  ECF No. 16 at 12-13.  However, Plaintiff did not satisfy the requirements to be found disabled in the prior application period; thus, his allegations that he has not work since 2001 due to a disability is inconsistent with the evidence of record. As such, the ALJ reasonably found that Plaintiff's allegations were inconsistent with his history of not working even prior to his current alleged onset date.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 2.  Lack of Treatment

The ALJ found Plaintiff's lack of treatment was inconsistent with his allegations of disabling limitations.  Tr. 15-16.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may

ORDER - 21

be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

While Plaintiff alleges disabling limitations, he has not sought any mental health treatment during the relevant adjudicative period. Tr. 15. The ALJ noted that while Plaintiff reports transportation is an issue for him obtaining treatment, he also reported receiving transportation from his sister. *Id.* Plaintiff also alleged there are long wait times to see providers, but there is no documentation of any attempts to obtain treatment being impaired by long wait times. Tr. 14-15. Plaintiff also contends he cannot attend treatment appointments due to his fear of

leaving his home and his need to be accompanied outside of this home.  ECF No.

16 at 14.  Plaintiff did not make such allegations at his hearing. *See* Tr. 26-28.

Plaintiff alleged waiting at his provider's office "really drags everything up," Tr.

31-32, but there is no evidence he visited his provider's office during the relevant

period.  Plaintiff alleged in his prior application for benefits that he was unable to

go to appointments alone, which the ALJ found was inconsistent with Plaintiff's

ability to attend appointments and examinations unaccompanied.  Tr. 97-99.  At a

January 2019 examination, which is the only medical record in the file, there is no

indication Plaintiff was accompanied by someone during the appointment.  Tr.

340-52.  Plaintiff contends he also did not pursue treatment due to an aversion to

medication, ECF No. 16 at 14, however there is no evidence Plaintiff pursued any

treatment of any type during the relevant period.  This was a clear and convincing

reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. Failure to Cooperate

The ALJ found Plaintiff did not cooperate with the Agency's process as he

failed to attend a consultative examination.  Tr. 15.  If a claimant does not have a

"good reason" for failing to take part in a consultative examination, then the

adjudicator may make a negative disability determination based solely on this

failure to take part in the process.  20 C.F.R. § 416.918(a) ("If you are applying for

benefits and do not have a good reason for failing or refusing to take part in

a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled."). The ALJ must consider the claimant's physical, mental, educational and linguistic limitations in determining whether the claimant had a good reason for failing to cooperate by not attending a consultative examination. *Id.* The ALJ must also consider any mental impairment that the claimant may have when evaluating the claimant's ability to cooperate with the disability review process. *See Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992).

Plaintiff contends he did not attend his consultative examination because he chose not to pursue the physical side of is claim. ECF No. 16 at 15. This conflicts with Plaintiff's assertion that his obesity is a severe impairment that amounts to a changed circumstance. *Id.* at 6-7. Plaintiff also contends the ALJ failed to consider that Plaintiff's limitations in leaving his home also limited his ability to attend the examination. *Id.* at 15. However, when the Disability Analyst spoke with Plaintiff's counsel about the missed examination, the only report is that Plaintiff did not want to pursue the physical component of his claim; there is no mention of an inability to leave his home. Tr. 143. The ALJ reasonably found Plaintiff failed to cooperate with the disability process.

On this record, the ALJ gave clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

**E. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of Tasmyn Bowes, Psy.D. ECF No. 16 at 16-21. As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)-(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior

administrative medical finding" (including, but not limited to, "evidence showing a

medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements").

20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative
> medical finding(s), the more persuasive the medical opinions or
> prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how

the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when

two or more medical opinions or prior administrative findings "about the same

issue are both equally well-supported ... and consistent with the record ... but are

not exactly the same," the ALJ is required to explain how "the other most

persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

§ 416.920c(b)(3).

1    The Ninth Circuit recently addressed the issue of whether the changes to the

2    regulations displace the longstanding case law requiring an ALJ to provide specific

3    and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

4    *Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The

5    Court held that the new regulations eliminate any hierarchy of medical opinions,

6    and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court

7    reasoned the "relationship factors" remain relevant under the new regulations, and

8    thus the ALJ can still consider the length and purpose of the treatment relationship,

9    the frequency of examinations, the kinds and extent of examinations that the

10   medical source has performed or ordered from specialists, and whether the medical

11   source has examined the claimant or merely reviewed the claimant's records.  *Id.* at

12   *6.  However, the ALJ is not required to make specific findings regarding the

13   relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

14   explanation supported by substantial evidence when rejecting an examining or

15   treating doctor's opinion as unsupported or inconsistent.  *Id.*

16   Dr. Bowes conducted a psychological consultative examination and rendered

17   an opinion on Plaintiff's functioning on January 28, 2019.  Tr. 340-51.  Dr. Bowes

18   diagnosed Plaintiff with PTSD; social anxiety disorder; disorder of written

19   expression, per past testing; and rule out dependent personality disorder.  Tr. 342.

20   Dr. Bowes opined Plaintiff has moderate limitation in his ability to be aware of

normal hazards and take appropriate precautions; marked limitations in his ability

to understand, remember, and persist in tasks by following very short and simple

instructions, learn new tasks, make simple work-related decisions, and ask simple

questions or request assistance; and severe limitations in his ability to understand,

remember, and persist in tasks by following detailed instructions, perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances without special supervision, perform routine tasks without

special supervision, adapt to changes in a routine work setting, communicate and

perform effectively in a work setting, maintain appropriate behavior in a work

setting, complete a normal workday/workweek without interruptions from

psychologically based symptoms, set realistic goals and plan independently; and

opined Plaintiff overall has a "severe" severity rating. Tr. 343. Dr. Bowes opined

Plaintiff's impairments were likely to last 18 or more months with available

treatment. *Id.* The ALJ found Dr. Bowes' opinion was not persuasive. Tr. 16.

First, the ALJ found Dr. Bowes' opinion was conducted during a time when

Plaintiff had not undergone any treatment for a sustained period. Tr. 16. While

the fact that a claimant fails to pursue treatment is not directly relevant to the

weight of a medical provider's opinion, s*ee* 20 C.F.R. § 416.920c, the consistency

of a medical opinion with the record as a whole is a relevant factor in evaluating a

medical opinion, *see* 20 C.F.R. § 416.920c(2). As discussed *supra,* the ALJ found

Plaintiff's lack of any treatment for his reportedly disabling limitations undermined the argument that the limitations are disabling.  Dr. Bowes recommended Plaintiff pursue mental health counseling, regular psychiatric evaluations, and medication, Tr. 344, which he did not do. As the examination was performed during a time when Plaintiff was not receiving counseling or medication, the examination may not reflect the highest functioning Plaintiff is capable of.  *See* Tr. 16, 341.

Plaintiff contends the ALJ failed to consider that his "Listing-level impairment" prevented him from seeking treatment.  ECF No. 16 at 18.  As discussed *supra,* Plaintiff did not cite to objective evidence to support his contention his impairments meet a listing, nor did he set forth an argument that demonstrates he meets the A criteria of any listing, and there is evidence from his prior application and Dr. Bowes' examination that demonstrate Plaintiff can attend appointments/examinations unaccompanied.  The ALJ reasonably found Plaintiff's lack of treatment undermined Dr. Bowes' opinion.

Second, the ALJ found Dr. Bowes' opinion was not supported by the objective evidence nor was it supported by the narrative explanation.  Tr. 16. Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §

ORDER - 29

1    416.920c(c)(1).  While Dr. Bowes wrote "poor short-term memory noted," there is

2    no explanation of memory test results to support the note.  Tr. 16, 344.  Dr. Bowes

3    checked that Plaintiff's insight and judgment were within normal limits, but then

4    wrote "poor insight noted."  Tr. 16, 345.  She also checked boxes indicating

5    Plaintiff correctly answered three fund of knowledge questions but checked a box

6    indicating Plaintiff's fund of knowledge was abnormal, with no explanation.  Tr.

7    16, 344.  The ALJ reasonably found Dr. Bowes' opinion was not supported by the

8    evidence and narrative explanation.

9        Third, the ALJ found Dr. Bowes' opinion was based on Plaintiff's self-

10   report.  Tr. 16.  As supportability is one of the most important factors an ALJ must

11   consider when determining how persuasive a medical opinion is, 20 C.F.R. §

12   416.920c(b)(2), a medical provider's reliance on a Plaintiff's unsupported self-

13   report is a relevant consideration when determining the persuasiveness of the

14   opinion.  The ALJ noted that Dr. Bowes' report contained two references to

15   Plaintiff's self-reported symptoms/limitations.  Tr. 16.  As discussed *supra,* several

16   components of Dr. Bowes' opinion lack support from objective evidence and

17   narrative explanation.  As such, the ALJ reasonably found Dr. Bowes' opinion

18   relied on Plaintiff's self-report.

19       Next, the ALJ found Dr. Bowes only reviewed a single outdated evaluation.

20   Tr. 16.  The extent to which a medical source is "familiar with the other

ORDER - 30

1    information in [the claimant's] case record" is relevant in assessing the weight of

2    that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  The only record Dr.

3    Bowes reviewed was Dr. Schneider's 2011 examination.  Tr. 341.  Dr. Bowes did

4    not review the January 2017 examination in which Plaintiff was found to have

5    been malingering, Tr. 100, nor the February 2017 examination in which Plaintiff's

6    evaluation indicated symptom exaggeration, *id.*  Dr. Bowes did not have any

7    records to review from the relevant period due to Plaintiff's lack of treatment.

8    While Plaintiff reported a year of treatment in 2012, which included counseling

9    and medication, Tr. 341, Dr. Bowes did not have the records to review to

10    determine if Plaintiff had any symptom improvement with treatment.  The ALJ

11    reasonably found Dr. Bowes' opinion less persuasive given her review of the

12    records only included a 2011 examination.  Plaintiff is not entitled to remand on

13    these grounds.

14    **F. Lay Witness Evidence**

15         Plaintiff contends the ALJ erred in his consideration of the lay opinions of

16    Plaintiff's siblings.  ECF No. 16 at 21.  Unlike medical sources, an ALJ is not

17    required to articulate how he considered evidence from nonmedical sources using

18    the factors under 20 C.F.R. § 416.920c.  *See* 20 C.F.R. § 416.920c(d).  Plaintiff

19    contends the ALJ rejected the lay witness testimony without giving any reason to

20    discount their testimony.  ECF No. 16 at 21.  This is inaccurate.  The ALJ

discussed both lay witness statements and stated Plaintiff's statements and the lay witness statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons below." Tr. 14. The ALJ thus rejected the lay witness statements for the same reasons he rejected Plaintiff's statements. As discussed *supra,* the ALJ's rejection of Plaintiff's statements was supported by substantial evidence. As the lay witness statements largely restate Plaintiff's claims, the ALJ did not err in his consideration of the lay witness statements. *See Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 416.902(a). Further, the ALJ also noted inconsistencies between Plaintiff's brother's statement that Plaintiff had tried to work and the lack of any evidence in the record that such work attempt occurred. Tr. 15. The ALJ also noted that the siblings' statements about Plaintiff's incapacity to work are less persuasive because Plaintiff has no documented attempts to work. *Id.* Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

ORDER - 32

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 3, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 33